IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

─────────────────────────────────────────────────────

T.C. TYRA ELLIOTT,                )
                                  )
        Plaintiff,                )
                                  )
v.                                )    No. 19-2767-TLP-tmp
                                  )
L. GOLSTON, et al.,               )
                                  )
        Defendants.               )

─────────────────────────────────────────────────────

REPORT AND RECOMMENDATION

─────────────────────────────────────────────────────

On November 8, 2019, plaintiff T.C. Tyra Elliott filed a *pro se* complaint asserting § 1983 claims against Shelby County Sheriff's Office ("SCSO") Deputy Leon Golston, Jr., Deputy Deddrick Moore, and Sergeant Chad Cunningham.[1] (ECF No. 1.) Presently before the court are motions for summary judgment filed by all three defendants on May 11, 2021.[2] (ECF Nos. 112, 113, 114.) Elliott filed responses on May 17 and May 25, 2021. (ECF Nos. 115,

─────────────────────

[1]Elliott's complaint also originally named Magistrate James Franklin as a defendant. (ECF No. 1.) Magistrate Franklin subsequently moved to dismiss the claims against him under Rule 12(b)(6). (ECF No. 9.) The court granted Magistrate Franklin's motion and dismissed him from the lawsuit. (ECF Nos. 30 & 33.)

[2]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

116, 119.) Defendants filed their replies on May 28, 2021. (ECF
Nos. 121, 122, 123.) For the following reasons, it is recommended
that all three motions for summary judgment be granted on the basis
of qualified immunity.

## I.    PROPOSED FINDINGS OF FACT

### A.    Procedural Matters

1.   Summary Judgment briefing

As an initial matter, Elliott's responses to the motions for
summary judgment do not address the defendants' statement of
undisputed material facts or provide citations to the record. Local
Rule 56 requires that a party opposing a motion for summary
judgment "must respond to each fact set forth by the movant by
either: (1) agreeing that the fact is undisputed; (2) agreeing
that the fact is undisputed for the purpose of ruling on the motion
for summary judgment only; or (3) demonstrating that the fact is
disputed." LR 56.1(b). Furthermore, "[e]ach disputed fact must be
supported by specific citation to the record." Id.

Similarly, Rule 56 of the Federal Rules of Civil Procedure
requires that a party support or challenge factual assertions by:

> (A) citing to particular parts of materials in the
> record, including depositions, documents,
> electronically stored information, affidavits or
> declarations, stipulations (including those made for
> purposes of the motion only), admissions, interrogatory
> answers, or other materials; or

- 2 -

(B) showing that the materials cited do not establish
the absence or presence of a genuine dispute, or that an
adverse party cannot produce admissible evidence to
support the fact.

Fed. R. Civ. P. 56(c)(1). When a party fails to properly challenge
an opposing party's assertion of fact, Rule 56(e)(2) permits the
court to "consider the fact undisputed for purposes of the motion."
Fed. R. Civ. P. 56(e)(2); see also LR 56.1(d) ("Failure to respond
to a moving party's statement of material facts . . . within the
time periods provided by these rules shall indicate that the
asserted facts are not disputed for purposes of summary
judgment."). The court need not consider any unsupported factual
assertions.[3] See id.; see also Gunn v. Senior Servs. of N. Ky.,
632 F. App'x 839, 847 (6th Cir. 2015) ("'[C]onclusory and
unsupported allegations, rooted in speculation,' are insufficient
to create a genuine dispute of material fact for trial.") (quoting
Bell v. Ohio State Univ., 351 F.3d 240, 253 (6th Cir. 2003)).
Accordingly, the statements of undisputed material facts filed by
defendants, which are supported by sworn declarations and/or

---

[3]This includes any factual allegations contained in Elliott's
unsworn response briefs to defendants' motions for summary
judgment. See Wallace v. Brown, No. 2:17-cv-02269, 2020 WL 4228310,
at *3 (W.D. Tenn. July 23, 2020) ("Wallace's memorandum is unsworn
and is not competent summary judgment evidence."); see also King
v. UT Medical Group, Inc., No. 09-2080-SHM-dkv, 2011 WL 13269768,
at *3 (W.D. Tenn. Mar. 3, 2011) ("The Court cannot consider any
factual assertions that are made in legal memoranda or that are
not sworn to under penalty of perjury.").

- 3 -

citations to the complaint, are deemed undisputed for the purposes
of resolving these summary judgment motions.

The court notes that in Cunningham's motion for summary
judgment, he did not attach exhibits to his motion but instead
filed a statement of undisputed material facts that only cites to
Elliott's complaint. In other words, Cunningham essentially
stipulates (for the purposes of resolving this motion) that certain
factual allegations in the complaint are true. Elliott does not
challenge any of Cunningham's factual assertions, and most
importantly, the fact that Cunningham threatened to use pepper
spray on Elliott but did not actually deploy pepper spray.

"[A] party seeking summary judgment always bears the initial
responsibility of informing the district court of the basis for
its motion, and identifying those portions of 'the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any,' which it believes
demonstrate the absence of a genuine issue of material fact."
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The movant
may meet the initial burden by 'pointing out to the court that the
nonmoving party, having had sufficient opportunity for discovery,
has no evidence to support an essential element of his or her case,
and on which that party will bear the burden of proof at trial.'"
Metro. Life Ins. Co. v. Kelly, No. 16-cv-12544, 2017 WL 3085519,

at *3 (E.D. Mich. July 17, 2017) (quoting <u>Farmington Cas. Co. v.</u>
<u>Cyberlogic Techs., Inc.</u>, 996 F. Supp. 695, 698 (E.D. Mich. 1998)).
Cunningham's motion for summary judgment, filed after the close of
discovery, asserts that Elliott cannot establish that Cunningham
violated his Fourth Amendment rights. Cunningham contends that the
lack of any constitutional violation entitles him to qualified
immunity and therefore summary judgment. By alleging the inability
of Elliott to produce evidence of any constitutional violation,
Cunningham has met his initial burden.[4] <u>See</u> <u>id.</u>

    2.  <u>Video recordings submitted by Elliott</u>

    On May 24, 2021, the court entered an order granting Elliott
leave to file video recordings that he obtained from the defendants

---

[4]Alternatively, because the relevant facts stem solely from the
complaint, the court has discretion to construe and address the
motion for summary judgment as a motion to dismiss. <u>See</u> <u>Coleman v.</u>
<u>Gullet</u>, No. 12-10099, 2012 WL 5986779, at *10 n.3 (E.D. Mich. Sept.
4, 2012), <u>report and recommendation adopted</u>, 2012 WL 5986679 (E.D.
Mich. Nov. 29, 2012); <u>see also</u> <u>Davis v. Michigan Dept. of Corrs.</u>,
746 F. Supp. 662, 664 (E.D. Mich. 1990) ("[W]hen a Rule 56 motion
for summary judgment can be granted without considering extraneous
materials — such as affidavits — the district court has the
discretion to view such a motion as a Rule 12 motion to dismiss.")
(citing <u>Keenum v. Amboyer</u>, 558 F. Supp. 1321, 1323 n.11 (E.D. Mich.
1983)). Either way, the issue of qualified immunity, which serves
as "an entitlement not to stand trial or face the other burdens of
litigation," should be addressed. <u>Mitchell v. Forsyth</u>, 472 U.S.
511, 526 (1985) ("The entitlement is an immunity from suit rather
than a mere defense to liability; and like an absolute immunity,
it is effectively lost if a case is erroneously permitted to go to
trial.") (emphasis omitted).

during discovery and which he claimed show his physical
altercations with the defendants at issue in this case. (ECF No.
118, at 1-2.) In response to that order, on June 1, 2021, Elliott
filed five CDs labeled "V1" through "V5," each containing several
video files, along with a document styled "Demonstrative Exhibits
in Response to Defendants Summary Judgment" (ECF No. 124)
(hereinafter referred to as "notice of filing"), in which he
attempts to provide his own commentary regarding the events
depicted in the video recordings. On June 16, 2021, defendants
filed a motion to strike portions of the notice of filing as
exceeding the scope of the court's order authorizing Elliott to
file video recordings.[5] (ECF No. 125.) Elliott filed a response on

_____

[5]Technically, a motion to strike is not available at the summary
judgment stage. See Fox v. Mich. State Police Dept., 173 F. App'x
372, 375 (6th Cir. 2006) ("Exhibits attached to a dispositive
motion are not 'pleadings' within the meaning of Fed. R. Civ. P.
7(a) and are therefore not subject to a motion to strike under
Rule 12(f)."); see also Reed v. City of Memphis, 735 F. App'x 192,
197 (6th Cir. 2018) (holding that an affidavit is not a "pleading"
under Rule 7(a) and therefore is not subject to a motion to strike
under Rule 12(f)). Accordingly, the court construes defendants'
motion to strike as asserting that the court should disregard the
additional legal arguments and factual assertions contained in
Elliott's notice of filing to the extent that they exceed the scope
of the court's order authorizing the filing of video recordings.
See Loadman Group, L.L.C. v. Banco Popular N. America, No.
4:10cv1759, 2013 WL 1154528, at *1 n.4 (N.D. Ohio Mar. 19, 2013)
("[A] motion to strike is technically not available for motions
for summary judgment and the attachments thereto; rather, the
presented evidence may simply be disregarded on summary
judgment.") (citing Adams v. Valega's Prof. Home Cleaning, Inc.,
No. 1:12CV0644, 2012 WL 5386028, at * 2 (N.D. Ohio Nov. 2, 2012)

June 28, 2021, urging the court not to strike his notice of filing. (ECF No. 126.)

Since the video recordings were produced by the defendants during discovery and given Elliot's status as a *pro se* litigant, the court will give Elliott the benefit of the doubt and will consider the video recordings contained on the CDs.[6] The court will not, however, consider the unsupported factual assertions in Elliott's notice of filing to the extent they go beyond identifying the relevant video files and the individuals appearing in them. Similarly, the court will not consider any legal arguments in

_____

(collecting cases)).

[6]Although the court has taken into consideration Elliott's *pro se* status in deciding to accept the video recordings, his *pro se* status does not relieve him of the obligation to comply with the Local Rules and Federal Rules of Civil Procedure. See Morgan v. AMISUB (SFH), Inc., No. 18-cv-2042-TLP-tmp, 2020 U.S. Dist. LEXIS 162383, 2020 WL 5332946, at *3 n.5 (W.D. Tenn. Sept. 4, 2020) (collecting cases); see also Bass v. Wendy's of Downtown, Inc., 526 F. App'x 599, 601 (6th Cir. 2013) ("[N]onprisoner *pro se* litigants are treated no differently than litigants who choose representation by attorneys.") (citations omitted). *Pro se* non-prisoner litigants are not entitled to "special assistance." United States v. Ninety-Three (93) Firearms, 330 F.3d 414, 427-28 (6th Cir. 2003) (citing Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988)). This includes at the summary judgment stage. See Viergutz v. Lucent Techs., 375 F. App'x 482, 485 (6th Cir. 2010) ("[Plaintiff]'s status as a *pro se* litigant does not alter his duty on a summary judgment motion."); see also McKinnie v. Roadway Express, Inc., 341 F.3d 554, 558 (6th Cir. 2003) ("Ordinary civil litigants proceeding *pro se*, however, are not entitled to special treatment, including assistance in regards to responding to dispositive motions.").

Elliott's notice of filing or his personal commentary on the events depicted in the videos. When permitting Elliott to file video recordings of his altercations with defendants, the court did not authorize him to make any additional legal arguments or provide commentary on the videos. (ECF No. 118.) As defendants correctly point out, briefing on these motions for summary judgment closed once reply briefs were filed. See LR 56.1(c). Additionally, as stated above, because Elliott did not respond to defendants' statement of facts, the factual assertions contained therein "are not disputed for purposes of summary judgment." LR 56.1(d); see also Fed. R. Civ. P. 56(e)(2).

**B.    Events of June 7, 2019**

    1.    <u>Findings of facts based on Golston's and Cunningham's Statement of Undisputed Facts</u>

On June 7, 2019, Elliott was arrested while present in a court proceeding in the Juvenile Court of Memphis and Shelby County. (ECF No. 1, at 2; ECF No. 113-2, at 1.) At that time, Golston was employed by SCSO as a Sheriff's Deputy. (ECF No. 113-1, at 1.) While performing his duties as a Sheriff's Deputy at the Juvenile Court, Golston came into contact with Elliott. (Id.) Elliott alleges that Golston forced him into a holding cell and "rammed [him] full force about 5 to 10 feet . . . face first into a metal wall." (ECF No. 79, at 2; ECF No. 104, at 11.) However, based on

- 8 -

the undisputed statement of undisputed facts supporting Golston's motion, the court finds that during the encounter Golston did not ram Elliott face first into a metal wall of a holding cell. (ECF No. 113-1, at 2.)

Also on June 7, 2019, sometime after Elliott was arrested, Cunningham threatened Elliott with a can of pepper spray, stating that he would pepper spray Elliott in the mouth if he did not be quiet. (ECF No. 1 at 2-3.) However, Cunningham did not actually pepper spray Elliot, which Elliot does not dispute. (Id.)

2. Video evidence submitted by Elliott

While the court finds that the facts stated above are undisputed for the purposes of resolving these motions, the court will also address the video recordings submitted by Elliott. The notice of filing refers only to video recordings located on CDs "V3," "V4," and "V5," and Elliott does not provide dates for any of the footage.[7] (Id. at 1-3.) Upon review of the video files on these CDs, it appears that each disc contains video footage

---

[7]Because Elliott does not reference the CDs labeled "V1" and "V2" or describe their contents in his notice of filing, the court need not consider these CDs. See Fed. R. Civ. P. 56(c)(3). Nevertheless, the court has undertaken the task of reviewing the video files on CDs "V1" and "V2," and finds that they do not contain footage of any altercation.

recorded on different dates.[8] Based on Elliott's notice of filing and the court's review of the video footage, only the video files contained on CD "V4" contain footage of Elliott interacting with Cunningham on June 7, 2019, and only the video files contained on CD "V5" contain footage of Elliott's altercation with Golston on June 7, 2019. According to Elliott's notice of filing, however, CD "V5" contains footage of the events leading up to his confrontation with Cunningham on June 7.[9] (Id. at 2.)

CD "V4" contains two video files. Elliott's notice of filing identifies Cunningham as one of "the deputies of [the] juvenile court" present in that footage. (Id. at 2.) However, the footage does not show the confrontation between Elliott and Cunningham involving pepper spray. Accordingly, the video footage on CD "V4" is not relevant to resolving Cunningham's motion for summary judgment. CD "V5" also contains two video files, neither of which

---

[8]For example, Elliott appears in different clothing in the video footage on each disc. Additionally, the video files on CD "V4" contain "20190613" in their titles whereas the video files on CD "V5" contain "20190607" in their titles, seemingly a reference to June 13, 2019 and June 7, 2019, respectively. Based on the undisputed facts, the events underlying Elliott's claims against both Golston and Cunningham occurred on June 7, 2019.

[9]The court has reviewed the video files on CD "V3" and, consistent with the descriptions in Elliott's notice of filing, finds that none of the video files on that disc appear to contain footage of any altercation involving Elliott and Cunningham. (Id. at 3-4.)

- 10 -

show a confrontation involving pepper spray.[10] The first video
recording is from a camera in the holding area hallway and the
second is from a camera inside the holding cell.

As shown on CD "V5," at 3:23 of the hallway footage, two
officers emerge from a door at one end of the hallway with Elliott.
Elliott, whose wrists are handcuffed behind his back, is escorted
to a nearby holding cell while the officers remain in the hallway.
At 3:36, as one of the officers attempts to close the door to the
holding cell, Elliott bursts through the door into the hallway.
The officers wrestle Elliott to the ground and then proceed to
lift Elliott to his feet and press him up against the wall. At
4:05, one of the officers, identified as defendant Golston in the

---

[10]Elliott asserts that the video footage he submitted was altered
by defendants before it was produced to edit out the footage of
Elliott's confrontation with Cunningham. (ECF No. 124, at 2.)
Elliott previously asserted that defendants provided altered video
footage in their initial disclosures, moving to compel production
of original audio and video footage. (ECF No. 70.) Defendants, in
responding to that motion, asserted that "[c]ontrary to
[Elliott]'s unfounded assertions, the video evidence [he] received
was not edited or tampered with." (ECF No. 75, at 2 n.2.) Based on
defendants' representation, the court denied Elliott's request
that defendants produce the "un-redacted" video recording of
Cunningham. (ECF No. 100, at 2.) It is also worth noting that
Elliott does not assert that the video footage, if produced "un-
redacted," would give rise to a genuine dispute of material fact.
In other words, even if the "un-redacted" video footage showed
exactly what Elliott claims it does, it would not change the
court's legal analysis because according to Elliott's own
description of this video, Cunningham only pointed the pepper spray
at Elliott's mouth but did not actually spray him.

- 11 -

notice of filing, escorts Elliott into the holding cell. The other
officer walks to the other end of the hallway.

At 4:06 of the holding cell footage, Elliott enters the frame
followed by Golston. Elliott appears to be struggling against
Golston who pushes Elliott towards the back wall of the holding
cell and seats him on a bench located there. Elliott turns to his
left just before the pair reach the back wall. At 4:10, Golston
seats Elliott on the bench and presses Elliott's right shoulder to
the back wall of the cell. At 4:13, Golston removes his left hand
from Elliott's arm. Golston's right arm remains behind Elliott's
back. At 4:15, another officer enters the holding cell. At 4:19,
Golston places his left hand on Elliott's left shoulder and uses
his right hand to remove items from Elliott's hands. By 4:36,
Golston is no longer making physical contact with Elliott at all.
Golston leaves the holding cell at 4:39, followed by the remaining
officers at 4:45. By 4:45, Elliott is left alone inside the holding
cell. This video footage is entirely consistent with Golston's
statement of undisputed facts and shows that Elliott was not
"rammed" face first into the wall.[11]

_____

[11]Elliott asserts in his notice of filing that the hallway video
recording on CD "V5" shows that an officer jumped on his back and
that he was choked and kicked by officers. (ECF No. 124, at 2.)
Although the court will not consider these new allegations
contained in the notice of filing against unnamed individuals, see
supra, it is worth noting that the recording does not show any

C.   **Events of January 28, 2020**

    1.   Findings of fact based on Moore's Statement of Undisputed Facts

On January 28, 2020, Elliott was present in the Juvenile Court of Memphis and Shelby County for a court proceeding. (ECF No. 114-1, at 1; ECF No. 13, at 1.) At that time, Moore was employed by SCSO as a Sheriff's Deputy. (ECF No. 114-1, at 1.) While performing his duties as a Sheriff's Deputy that day, Moore interacted with Elliott. (Id.) Elliott alleges in his supplemental complaint that he was told he was being arrested. (ECF No. 13, at 1.) Elliott also alleges that during that interaction, Moore threw him against the wall of a holding cell and placed him in handcuffs. (Id.) However, based on the undisputed statement of facts supporting Moore's motion, the court finds that he did not throw Elliott against the wall in a holding cell or at any other time. (ECF No. 114-1, at 2.)

    2.   Video evidence submitted by Elliott

While the facts stated above are undisputed for the purposes

---

officers choking or kicking Elliott, nor could any officers' conduct be reasonably construed as jumping on Elliot's back. Elliott also asserts in the notice of filing, for the first time, that the holding cell video recording on CD "V5" shows Golston "running [Elliott] into a steel wall and using a side arm to choke [him]." Although this new claim is not properly before the court, the holding cell video footage does not show Golston running Elliott into a wall or choking him.

of resolving this motion, the court will also address video footage submitted by Elliott. Based on Elliott's notice of filing and the undersigned's review of the video footage, only the video files contained on CD "V3" contain footage of Elliott's altercation with Moore on January 28, 2020. The court has reviewed the video files on disks "V4" and "V5," and consistent with Elliott's descriptions in his notice of filing, finds that none of the video files on either disc appear to contain footage of any physical altercation between Elliott and Moore.

CD "V3" contains sixteen video files, only three of which are identified or described in Elliott's notice of filing.[12] (ECF No. 124, at 3.) Of the three video files from CD "V3" referenced in the notice of filing, Elliott identifies only one of the files by name, "ES001-Main Lobby North."[13] (ECF No. 124, at 3.) The other two files are identified only as "Garcia Block #1," a description contained in the names of eight videos on the disk. (Id.) Based on Elliott's descriptions, the videos referenced are "Garcia Block 1 – ES005-Holding Area Hallway" and "Garcia Block 1 – Courts Holding

_____

[12]The court need not consider the video files not identified in Elliott's notice. See Fed. R. Civ. P. 56(c)(3). Nevertheless, the court has reviewed the remaining video files and find they do not contain any footage of a physical altercation between Elliott and Moore.

[13]The full title of this video file is "Garcia Block 1 - ES001-Main Lobby North."

- 14 -

Cell #1." (Id.)

At 12:13 of the video titled "Garcia Block 1 - ES001-Main
Lobby North," Elliott enters the top of the frame. Two officers,
one of whom is identified as Moore in the notice of filing, are
escorting Elliott through the main lobby of the court building. At
12:30, the three individuals exit the camera's frame. At 12:35,
the individuals reenter the bottom of the camera's frame, and one
of the officers is lightly grasping the back of Elliott's hooded
sweatshirt. At 12:40, the officers guide Elliott through a door on
the left side of the lobby.

At 12:40 of the video titled "Garcia Block 1 – ES005-Holding
Area Hallway," Elliott enters a door at the far end of the hallway
followed by two officers. Elliott is not handcuffed at this time.
From 12:48 to 13:27, Elliott engages in a verbal dispute with the
officers. Elliott appears to be yelling at the officers and
occasionally pointing his finger in their faces. At 13:27, one of
the officers, identified as Moore in the notice of filing, grabs
Elliott's sweatshirt behind his left arm and presses him against
the wall. Elliott turns away from Moore, moving and pointing
towards another officer at the end of the hallway. At 13:37, Moore
gathers Elliott's hands behind his back, and Elliott is placed in
handcuffs. At 13:58, Moore escorts Elliott into a nearby holding
cell. At 14:00 of the video titled "Garcia Block 1 – Courts Holding

- 15 -

Cell #1," Elliott enters the holding cell followed by Moore. Elliott's hands are cuffed behind his back. Moore points to the bench at the back of cell and leaves at 14:05. No further physical altercation takes place.[14]

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden to "demonstrate the absence of a genuine [dispute]

---

[14]As stated above, the court will not consider Elliott's new assertions in the notice of filing related to Moore, specifically, that Moore punched him in the face. However, even if the court were inclined to do so, the video footage provided on CD "V3" blatantly contradicts Elliott's assertion that Moore punched him in the face. Specifically, Elliott alleges that at 13:30 of the video titled "Garcia Block 1 – ES005-Holding Area Hallway," Moore grabbed Elliott and "hit [him] in the face" before putting him in handcuffs. (ECF No. 124, at 3.) Notably, Elliott does not assert in the notice of filing or in his response to the motion for summary judgment that Moore threw him against the wall once inside the holding cell, which was his original claim. The video footage clearly shows that Moore never hit Elliott in the face. Rather, at 13:27, Moore grabs Elliott's sweatshirt and presses him up against the wall.

- 16 -

of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323
(1986). "Once the moving party has presented evidence sufficient
to support a motion for summary judgment, the nonmoving party is
not entitled to trial merely on the basis of allegations;
significant probative evidence must be presented to support the
complaint." <u>Goins v. Clorox Co.</u>, 926 F.2d 559, 561 (6th Cir. 1991).

In order to defeat summary judgment, the party opposing the
motion must present affirmative evidence to support its position;
a mere "scintilla of evidence" is insufficient. <u>Bell</u>, 351 F.3d at
247 (quoting <u>Anderson</u>, 477 U.S. at 252). Conclusory allegations,
speculation, and unsubstantiated assertions are not evidence and
are not sufficient to defeat a well-supported motion for summary
judgment. <u>Gunn</u>, 632 F. App'x at 847. Similarly, a court may not
consider inadmissible unsworn hearsay in deciding a motion for
summary judgment. <u>Tranter v. Orick</u>, 460 F. App'x 513, 514 (6th
Cir. 2012). "In making this assessment, [the court] must view all
evidence in the light most favorable to the nonmoving party." <u>McKay
v. Federspiel</u>, 823 F.3d 862, 866 (6th Cir. 2016).

**B.    Qualified Immunity**

Elliott's excessive force claims against the defendants arise
under 42 U.S.C. § 1983, "which provides a cause of action for the
deprivation of constitutional rights by persons acting under color
of state law." <u>Torres v. Madrid</u>, 141 S. Ct. 989, 994 (2021).

"Section 1983 claims, however, are subject to the affirmative
defense of qualified immunity which, if applicable, shields
individuals not just against liability, but against the suit
itself." Reilly v. Vadlamudi, 680 F.3d 617, 623 (6th Cir. 2012)
(citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "Qualified
immunity shields public officials from civil liability under 42
U.S.C. § 1983 unless their actions violate clearly established
rights 'of which a reasonable person would have known.'" Hopper v.
Plummer, 887 F.3d 744, 751 (6th Cir. 2018) (quoting Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982)).

        "The plaintiff has the burden to 'show that the defendant is
not entitled' to qualified immunity." Untalan v. City of Lorain,
430 F.3d 312, 314 (6th Cir. 2005) (quoting Blake v. Wright, 179
F.3d 1003, 1007 (6th Cir. 1999)). "To defeat defendant['s] motion
on qualified-immunity grounds, plaintiff must come forward with
evidence from which a jury could find '(1) that the official
violated a statutory or constitutional right, and (2) that the
right was clearly established at the time of the challenged
conduct.'" Hopper, 887 F.3d at 751 (quoting Ashcroft v. al-Kidd,
563 U.S. 731, 735 (2011)).

        Claims of excessive force may arise under the Fourth, Eighth,
or Fourteenth Amendments. Id. "While the Fourth Amendment's
prohibition against unreasonable seizures bars excessive force

                                        - 18 -

against free citizens, the Eighth Amendment's ban on cruel and
unusual punishment bars excessive force against convicted
persons." Id. (internal citations omitted). "When an individual
does not clearly fall within either category, the Fourteenth
Amendment's Due Process Clause prohibits a governmental official's
excessive use of force." Id. (citing Phelps v. Coy, 286 F.3d 295,
299-300 (6th Cir. 2002)). Because Elliott was not a convicted
person at the time of the events underlying his complaint, the
Eighth Amendment does not apply to his claim of excessive force.
See id. at 752. As for the Fourth or Fourteenth Amendment, the
standard for excessive force claims is the same under both. See
Morabito v. Holmes, 628 F. App'x 353, 357 (6th Cir. 2015) (finding
that "no dividing line is necessary" between the Fourth and
Fourteenth Amendment zones of protection against excessive force).

    For claims of excessive force arising under the Fourth (or
Fourteenth) Amendment, courts "inquire whether the plaintiff has
shown 'that the force purposely or knowingly used against him was
objectively unreasonable.'" Hopper, 887 F.3d at 752 (quoting
Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015); citing Graham
v. Connor, 490 U.S. 386, 397 (1989)). Thus, Elliott's claims are
"governed by an objective reasonableness standard," and "[t]he
officer's subjective intentions are irrelevant." Hanson v. Madison
Cty. Det. Ctr., 736 F. App'x 521, 528 (6th Cir. 2018) (internal

quotation marks omitted). The objective reasonableness standard "turns on the 'facts and circumstances of each particular case.'" Kingsley, 576 U.S. at 397 (quoting Graham, 490 U.S. at 396). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396). "Under this standard, courts assess the totality of the circumstances." Hanson, 736 F. App'x at 528 (citing Graham, 490 U.S. at 397).

In the pre-trial context, a non-exhaustive list of factors relevant to the determination of reasonableness include: (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or to limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by the officer"; and (6) "whether the plaintiff was actively resisting." Kingsley, 576 U.S. at 397 (citing Graham, 490 U.S. at 396); see also Hanson, 736 F. App'x at 528-29. "In the end, the litmus test is whether, on balance, an act of ''gratuitous violence' has been inflicted,' see Coley v. Lucas Cty., Ohio, 799 F.3d 530, 539 (6th Cir. 2015), so as to cross 'the constitutional line' that lies beyond 'common-

law assault.'" <u>Degolia v. Kenton Cty.</u>, 381 F. Supp. 3d 740, 757
(E.D. Ky. 2019) (quoting <u>Hanson</u>, 736 F. App'x at 530).

    1.   <u>Golston</u>

Golston asserts that he is entitled to qualified immunity
because Elliott cannot produce evidence from which a reasonable
jury could find that Golston violated any of Elliott's
constitutional rights. Upon review of the record, the court agrees
that Elliott has not met his burden of establishing a
constitutional violation. The video footage shows that when
Golston and another officer attempted to place Elliott in a holding
cell, Elliott burst through the door of the cell before it could
close, heading towards a door at the end of the hallway. Golston
and the other officer present wrestled Elliott to the ground and
then pressed him up against the wall. Golston then escorted Elliott
back into the holding cell and pushed him towards the back wall of
the cell.

Based on the undisputed facts established above, including
the video footage submitted by Elliott, Golston did not ram Elliott
face first into the wall, as Elliott (at one time) claimed. Rather,
Golston pushed Elliott to the bench at the back of the room, seated
him on it, and pressed Elliott's right shoulder against the wall
to secure him until another officer arrived. Based on the video

- 21 -

footage, the amount of force used by Golston was minimal. Moreover, there was a legitimate need for the use of force because Golston was returning Elliott to a holding cell moments after Elliott tried to escape. Elliott's actions created a serious security problem to which Golston and the other officers present had to react. The use of force at issue here occurred at the tail end of Elliott trying to escape the holding cell and struggling with officers in the hallway, quintessential examples of active resistance. See Eldridge v. City of Warren, 533 F. App'x 529, 535 (6th Cir. 2013) (finding that "a deliberate act of defiance using one's own body" or "a verbal showing of hostility" can constitute "active resistance"). Elliott initiated the confrontation requiring Golston's use of force, and Golston used minimal force in response. In addition, Elliott has provided no evidence whatsoever as to any resulting injury, and based on the video footage, Elliott did not appear to suffer any visible injuries. The undersigned submits that no reasonable jury could view the video footage provided by Elliott and find that Golston exerted an objectively unreasonable amount of force.[15] Accordingly, because no constitutional violation

---

[15]"In cases where the events at issue are depicted in a recorded video tape, the court need not accept the allegations of a party that are 'blatantly contradicted by the record.'" Simpson v. City of Dearborn, No. 18-13156, 2019 U.S. Dist. LEXIS 207724, at *6, 2019 WL 6496563, at *2 (E.D. Mich. Dec. 3, 2019) (quoting Scott v. Harris, 550 U.S. 372, 380-81 (2007)). Rather, "the court must view

occurred, Golston is entitled to qualified immunity and summary
judgment.

Although the court need not reach the "clearly established"
prong of the qualified immunity analysis where there is no
violation of a statutory or constitutional right, see Reilly, 680
F.3d at 623, the court notes that Elliott also has the burden of
demonstrating that the right purportedly violated was clearly
established at the time. See Everson v. Leis, 556 F.3d 484, 494
(6th Cir. 2009) ("The plaintiff has the burden of showing that a
right is clearly established.") (citing Barrett v. Steubenville
City Sch., 388 F.3d 967, 970 (6th Cir. 2004)); see also Hanson,
736 F. App'x at 529; Hopper, 887 F.3d at 751; Coley, 799 F.3d at
540. Generally, to satisfy this burden, "[a] plaintiff must
identify a case with a fact pattern similar enough to have given
'fair and clear warning to officers' about what the law requires."
Hopper, 887 F.3d at 755 (quoting White v. Pauly, 137 S. Ct. 548,
552 (2017)); see also Vanderhoef v. Dixon, 938 F.3d 271, 278 (6th

_____

the facts 'in the light depicted by the videotape.'" Pennington v.
Terry, 644 F. App'x 533, 538 (6th Cir. 2016) (quoting Scott, 550
U.S. at 381); see also Gambrel v. Knox Cnty., Kent. No. 20-6027,
2022 WL 369348 at *8 (Feb. 8, 2022). "The court must draw
reasonable inferences in favor of the nonmoving party from the
video recording, but only 'to the extent supportable by the
record.'" Id. (quoting Scott, 550 U.S. at 381 n.8); see also Shreve
v. Franklin Cty., 743 F.3d 126, 132-33 (6th Cir. 2014) ("[A]ccounts
seeking to contradict an unambiguous video recording do not create
a triable issue.").

Cir. 2019); Millinder v. Hudgins, 421 F. Supp. 3d 549, 561 (W.D. Tenn. 2019). Elliott's response to the motion for summary judgment does not develop any argument as to the clearly established prong of the qualified immunity analysis or identify any cases at all. Accordingly, Elliott has not met his burden of showing that any right that was allegedly violated was clearly established at the time. See Hanson, 736 F. App'x at 533; see also Degolia, 381 F. Supp. 3d at 757. This is an additional basis for granting Golston's motion for summary judgment.

  2.  Cunningham

     Cunningham previously moved for judgment on the pleadings as to Elliott's claim of excessive force. (ECF No. 23.) The undersigned entered a report and recommendation on August 5, 2020, which addressed Cunningham's argument "that because he is not alleged to have actually pepper-sprayed Elliott, he did not use force against him and cannot be liable for excessive force." (ECF No. 80, at 4.) The undersigned determined that, under Sixth Circuit precedent, "pointing pepper spray at someone and threatening to pepper spray them in the mouth . . . qualifies as a use of force." (Id. at 6.) However, the report did not address whether Cunningham's conduct, if understood as a use of force, would be excessive, or whether qualified immunity would apply. (Id.) On

September 17, 2020, the presiding district judge adopted the report
and denied the motion for judgment on the pleadings. (ECF No. 88.)
Cunningham's motion for summary judgment calls for the court to
answer the questions left open following the denial of his motion
for judgment on the pleadings.

Based on the undisputed facts established above, Cunningham
never pepper sprayed Elliott. Rather, Cunningham threatened to
pepper spray Elliott if he refused to be quiet.[16] In moving for
summary judgment, Cunningham argues that the threat to use pepper
spray cannot constitute excessive force. (ECF No. 112-2, at 4.)
Cunningham cites numerous out-of-circuit cases to support his
contention. See Lemmo v. City of New York, No. 08 CV 2641 RJD,
2011 WL 4592785, at *8 n.5 (E.D.N.Y. Sept. 30, 2011) (holding that
the officer's "threat" of using pepper spray against the plaintiff
"would not be actionable as an actual use of excessive force.")
(citation omitted); see also Morales v. Paynter, No. 5:12-CT-3167,
2014 WL 1057010, at *2-3 (E.D.N.C. Mar. 18, 2014); Bloss v. Ben-
Sahile, No. 2:16-cv-01425, 2019 WL 1598753, at *5-6 (C.D. Cal.

---

[16]As the court concluded in its order denying Cunningham's motion
for judgment on the pleadings (ECF No. 88, at 3), pointing a non-
lethal weapon such as pepper spray at an individual and threatening
to discharge the weapon qualifies as a use of force under Sixth
Circuit precedent. See Stricker v. Twp. of Cambridge, 710 F.3d
350, 364 (6th Cir. 2013); see also Kent v. Oakland Cty., 810 F.3d
384, 394 (6th Cir. 2016) (describing "pointing weapons" as being
a "use of force").

Feb. 21, 2019); <u>Coleman v. Griffie</u>, No. 4:18-cv-04151, 2019 WL
238157, at *3 (W.D. Ark. Jan. 16, 2019); <u>Pullman v. Schwarzenegger</u>,
No. 11-CV-202, 2011 WL 6396631, at *6 (S.D. Cal. Dec. 20, 2011);
<u>Perez v. Sisto</u>, No. CIV. S-06-2090, 2010 WL 2880165, at *15 (E.D.
Cal. July 21, 2010). The parties have not cited, and the court in
conducting its own research could not find, any Sixth Circuit cases
involving a claim of excessive force based on an officer
threatening an individual with pepper spray.[17]

The court need not resolve the issue of a constitutional
violation, however, because even if Cunningham's conduct was
somehow objectively unreasonable, Elliott has not met his burden
of demonstrating that a reasonable jury could find that the right
purportedly violated was clearly established at the time. <u>See</u>
<u>Everson</u>, 556 F.3d at 494. Elliott's response to Cunningham's motion
for summary judgment does not develop any argument as to the

---

[17]The Sixth Circuit has addressed claims of excessive force based
on an officer pointing a taser at an individual and threatening to
discharge it. <u>See</u> <u>Stricker</u>, 710 F.3d at 364. However, the Sixth
Circuit "has never found that pointing a taser, as opposed to
actually discharging one, constitutes the use of excessive force."
<u>Evans v. Plummer</u>, 687 F. App'x 434, 442 (6th Cir. 2017); <u>see also</u>
<u>Stricker</u>, 710 F.3d at 364 (finding that the officer's actions were
objectively reasonable and no Fourth Amendment violation had
occurred). Since the Sixth Circuit found no constitutional
violation in <u>Stricker</u>, "that case cannot constitute clearly
established law sufficient to deny . . . qualified immunity."
<u>Evans</u>, 687 F. App'x at 443 (citing <u>White v. Pauly</u>, 137 S. Ct. 548,
551 (2017)); <u>see also</u> <u>Guilford v. Frost</u>, 269 F. Supp. 3d 816, 829
(W.D. Mich. 2017).

- 26 -

clearly established prong of the qualified immunity analysis or identify any cases related to this issue. Because Elliott has not met his burden, Cunningham is entitled to qualified immunity and, accordingly, summary judgment.

    3.   <u>Moore</u>

    Moore asserts that he is entitled to qualified immunity because Elliott cannot produce evidence from which a jury could find that Moore violated Elliott's Fourth Amendment rights or any other constitutional rights. The court agrees that Elliott has not met his burden of establishing a constitutional violation. The video footage clearly shows that Moore did not throw Elliott into a wall or strike him in the face. Rather, Moore pressed Elliott up against the wall while placing him in handcuffs, which occurred only after Elliott engaged in a verbal dispute with the officers, yelling at them and occasionally pointing his finger in their faces. The video footage shows that Moore used a negligible amount of force and there were no apparent injuries. No reasonable jury could find that Moore exerted an objectively unreasonable amount of force. Because no constitutional violation occurred, Moore is entitled to qualified immunity and summary judgment. Additionally, Elliott's response to the motion for summary judgment does not develop any argument as to the clearly established prong of the

- 27 -

qualified immunity analysis or identify any cases. Accordingly, Elliott has not met his burden of showing that any right that was allegedly violated was clearly established at the time. See Hanson, 736 F. App'x at 533. This is an additional basis for granting Moore's motion for summary judgment.

### III. RECOMMENDATION

Based on the above, it is recommended that the motions for summary judgment for all defendants be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

February 17, 2022
 Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**